| THIBODEAUX, Judge.
On June 21, 1996, the defendant, Bradford Ste. Marie, was convicted of four counts of indecent behavior with juveniles. Ste. Marie was sentenced on each count to serve five years at hard labor with all but two years suspended, with the sentences to run consecutively, and five years of supervised probation. Ste. Marie appeals. Because we conclude that the trial court abused its discretion in denying Ste. | gMarie’s request for a continuance, we reverse the judgment of the trial court and remand the matter for a new trial.
I.

FACTS

In April of 1995, two children, C.H. and A.H., alleged sexual misconduct by Ste. Marie while they were playing games in his backyard. Two other children who are sisters, Am.G. and As.G., made similar claims after being questioned by their parents. Detective Annette LeBlanc of the Iberia Parish Sheriffs Office investigated the complaints and videotaped her interviews with the children.
On June 7,1995, Ste. Marie was charged by bill of information with four counts of indecent behavior with juveniles. On July 25, 1995, Ste. Marie appeared for arraignment and entered a plea of not guilty to the charges.
On June 9, 1995, Ste. Marie filed a Motion for Discovery which included a request for all evidence that was favorable to him and which was material and relevant to the issue of guilt or punishment. In response, the State granted open file discovery. Subsequently, Ste. Marie filed a Motion to Compel, contending that the State had failed to respond adequately to his Motion for Discovery. The case was originally set for trial on November 6, 1995, but was continued until June 10, 1996.
On Thursday, June 5, 1996, five days before trial, Leon Roy, Ste. Marie’s defense counsel, requested access to the videotaped interviews which were conducted by Detective LeBlanc. The State denied Roy access to the videotape. On the day of trial, the State informed the trial court that it had lost the videotape. The State asserted that it did possess an audiotape of the interviews. Upon learning of the loss of the videotape, Roy moved for a continuance, explaining that he had prepared witnesses to review the videotape in order to establish a defense. The trial court 13denied the motion and commenced with the trial. Ste. Marie was convicted of four counts of indecent behavior with juveniles.
Ste. Marie appeals his conviction and sentence on the basis of sixteen assignments of error.[1] However, since Ste. Marie only briefed eight assignments of error, we find that the remaining eight have been abandoned. We find merit in the failure to grant a continuance and therefore reverse. We shall discuss the issue of whether the evidence was insufficient to sustain a verdict of guilty on the allegations involving Am.G. and As.G., but will pretermit discussion of the remaining assignments of error.
IL '

INSUFFICIENCY OF THE EVIDENCE

Defendant claims the evidence was insufficient to prove every element of the charges regarding Am.G. and As.G.[2] For the reasons stated in State v. Hearold, 603 *825 So.2d 731 (La.1992), we address Ste. Marie’s insufficiency of the evidence claim first because if the entirety of the admissible and allegedly inadmissible evidence does not support a conviction, Ste. Marie is entitled to an acquittal and a discussion of trial error issues would be moot. The standard of review for the sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
|4In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Louisiana Revised Statutes 14:81 requires the State to prove that Ste. Marie, who is over seventeen years of age, committed a:
lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child’s age shall not be a defense.
A. Am.G.
Ste. Marie claims the State failed to prove he committed a lewd or lascivious act on Am.G., or that he did so with the specific intent of gratifying sexual desires. During her testimony, Am.G. stated that Ste. Marie touched her private parts over her clothes, a place she claims that Ste. Marie should not have touched her. Am.G. further testified the Defendant never put his finger inside her clothes or in her vagina. She stated that Ste. Marie would touch A.H. and As.G. in the same manner while playing in his shed, which was located in his backyard. She did not remember how Ste. Marie touched her private parts with his hand. She did not remember how old she was the first time or last time Ste. Marie touched her vagina, nor how many times he touched her. Ste. Marie would touch her private parts when they would play the “airplane” game. She was never alone with him. He never disrobed in front of Am.G., asked her to remove her clothing, or showed her dirty books or movies. Am.G. admitted that she became very angry after Ste. Marie told her she could not play with his grandson, C/s, toys. Ste. Marie’s testimony revealed that he told Am.G. she could not play with Cy’s toys after a fist fight ensued between the two children on April 8, 1995. Three days later the complaints against Ste. Marie were Rmade. Am.G.’s mother, Annette Gentry, testified that Am.G. has a temper and has told her mother that she hates her.
Am.G. consulted with Cindy Hayes, a licensed clinical social worker, on six occasions after her initial report of touching. At trial, Ms. Hayes testified that Am.G. wrote down on a piece of paper that Ste. Marie rubs her “Suzie” (Am.G.’s name for vagina). Am.G. told Ms. Hayes that Ste. Marie puts his finger in “our Suzie” while in his shed. Am.G. directly quoted to Ms. Hayes, “every day that we went he did it.” Am.G. said that Ste. Marie would play “airplane” with the girls and he would usually catch them in their private part. When he would catch them in their private parts, as he would put them down, he would put his finger in the girls’ vaginas. Am.G. said afterward it would burn when she urinated. Am.G. indicated Ste. Marie would keep his finger up her vagina from two to three minutes, often in the presence of the other girls.
C.H., one of the victims, testified that she remembered going to the Ste. Marie’s house right before Easter in her bathing suit. She remembered seeing Ste. Marie put his finger in A.H., another victim, and in Am.G. when he picked them up and held them in the air. C.H. was not sure if he also did this to As.G. Theresa Hansen, *826 A.H.’s mother, testified that A.H. told her that Ste. Marie put his hand in her vagina. When asked if she had seen Ste. Marie do this with someone else, A.H. said she saw the Defendant do it to Am.G. and C.H. A.H. testified at trial that Ste. Marie would touch her outside her clothes if she had shorts on but inside her clothes if she had a dress on. A.H. stated she was in Ste. Marie’s shop when he touched her. When asked if she saw him “do this type of stuff’ to anybody else, A.H. answered, “[Am.G.].”
IfiThe inconsistencies between Am.G.’s trial testimony and her earlier statement to Ms. Hayes are troubling. However, Am.G. has consistently stated that Ste. Marie touched her in her private parts. Am.G.’s trial testimony alone may be insufficient to prove that Ste. Marie, committed a lewd and lascivious act upon Am.G. However, Am.G.’s trial testimony, coupled with Ms. Hayes’ testimony and the other victims’ testimonies, was sufficient to prove that Ste. Marie committed a lewd and lascivious act upon Am.G.
In his brief, Ste. Marie claims the only evidence indicating a lewd and lascivious act upon Am.G. was the inadmissible hearsay testimony from Cindy Hayes. However, according to State v. Hearold, 603 So.2d 731, this evidence, admissible or inadmissible, should be considered in determining the sufficiency of the evidence. Thus, for purposes of sufficiency of the evidence, Ms. Hayes’ testimony should be considered. Considering all of the evidence admitted at trial, the evidence was sufficient to prove that Ste. Marie committed a lewd and lascivious act upon Am.G. It could reasonably be inferred from these facts that the Defendant committed such act with the intent to gratify his sexual desires. See State v. Murphy, 515 So.2d 558 (La.App. 1 Cir.1987), rev’d on other grounds, 542 So.2d 1373 (La.1989).
B. As.G.
Ste. Marie also argues the evidence was insufficient to prove he committed a lewd and lascivious act upon As.G. with the specific intent to gratify his sexual desires. In support of this claim Ste. Marie argues the inconsistencies in As.G.’s statements render them unreliable. He does not refer to any specific inconsistencies.
|7As.G., five years old at the time of trial, testified that Ste. Marie would “mess in it” with his finger, where “it” meant her private parts. She stated that Ste. Marie did that once in his backyard when she was alone and when she was four years old. She initially testified that she did not remember if anyone was there when Ste. Marie touched her, but she later indicated that her brother and sister along with A.H. were present. Defense counsel asked if she had been told how to answer the questions:
Q. Did you and Ms. Lori practice the questions she was going to ask you today?
A. Yes.
Q. Did she tell you what she wanted you to answer?
A. Yes.
Q. And that’s the answers you’re giving us today?
A. Yes.
Annette Gentry, As.G.’s mother, testified that she asked As.G. if Ste. Marie ever touched her in her privates and As.G. said yes. As.G. also told her mother that he stuck his fingers in her and it hurt.
Ms. Hayes consulted As.G. on the same days in which she consulted her sister, Am.G. As.G. told Ms. Hayes that Ste. Marie had put his hand inside her underwear and he put his finger inside her “Suzie.” As.G. said that Ste. Marie pushed real hard with his finger and it occasionally burned when she urinated. As.G. also said that he would do this in his shed and he would lay her down. Defendant did this most of the time she went over to Defendant’s house.
A portion of As.G.’s original statement to Detective LeBlanc was admitted into *827 evidence. This statement was given during the investigation of Ste. Marie. He contends this interview is inconsistent with As.G.’s testimony at trial. On |sthe tape, the first thing Detective LeBlanc told As.G. was that her mom told Detective LeBlanc that someone in the neighborhood had been touching As.G. in places they should not have touched her. As.G. responded that it was Mr. Brad. She then asked As.G., “Where does Mr. Brad touch you? Down there?” As.G. stated that Ste. Marie touches her at her house and she never goes to his house. He comes to her house to see her mother. She said that Ste. Marie “messes with her privates” and also does this to C.H., Am.G., M.H.,[3] and A.H. She stated that she never plays games with Ste. Marie, including the “airplane” game. She then contradicted herself by saying that she sometimes goes to Ste. Marie’s house with Am.G. and A.H. The tape was then cut off.
There are substantial inconsistencies in As.G.’s trial testimony, her interview with Ms. Hayes, and her interview with Detective LeBlanc. At trial, As.G. stated that the touching only happened once, but Ms. Hayes testified that As.G. indicated it happened every time she went to Ste. Marie’s house. At trial and Ms. Hayes’ interview, As.G. said the touching happened at Ste. Marie’s house, while in the initial interview, she stated that the touching happened at her house. In her reasons for judgment, the trial court also noted that the neighbor who was present at As.G.’s initial report testified that As.G. stated that Ste. Marie tried to urinate on her and another child. As.G. indicated her answers had been coached by the District Attorney, which is a disturbing allegation. The trial court noted in its judgment that the fact that As.G.’s trial testimony conformed more closely to that of her playmates indicated it was reviewed for trial. Ste. Marie does not raise this issue in his brief.
At trial, Ste. Marie attempted to prove that As.G.’s interview with Detective Le-Blanc was very suggestive and, therefore, unreliable. He called Glenda [ flHuddleston as a witness. She was the original Assistant District Attorney assigned to this case and who now represents the children and their families in a civil suit against Ste. Marie. Ms. Huddleston had viewed the videotaped interviews of Detective Le-Blanc and the children with Assistant District Attorney Wayne Landry and later with defense counsel. Ms. Huddleston testified that she did not think the videotape was detailed enough. She wanted more details on times. Ms. Huddleston denied that she had commented in the past that Detective LeBlanc’s methods were totally improper and inappropriate.
Defendant next called Assistant District Attorney Wayne Landry, with whom Ms. Huddleston had viewed the videotaped interview by Detective LeBlanc, as a witness. Mr. Landry stated that Ms. Huddle-ston had commented to him that she thought the method of the interview was suggestive to the children and put words in their mouths.
Although As.G.’s trial testimony and pri- or statements contained inconsistencies as to the number of times the sexual conduct occurred and as to the place at which the conduct occurred, As.G. consistently testified that Ste. Marie touched her private with his finger. Although Ms. Hayes’ testimony may have been inadmissible, it should still be considered for purposes of sufficiency of the evidence under Hearold. Moreover, even if the interview conducted by Detective LeBlanc was unduly suggestive, Ste. Marie does not argue for purposes of the Jackson review that this evidence should not have been admitted or should not be considered. Furthermore, even without considering Detective Le-Blanc’s testimony, the evidence was plausibly sufficient to convict Ste. Marie.
*828 In its reasons for judgment, the trial court stated it had taken special care in evaluating the sufficiency of the evidence with respect to As.G., the youngest |invictim. After discussing the inconsistencies in As.G.’s allegations and the fact that As.G.’s testimony appeared to have been reviewed for trial, the trial court stated the following:
The court finds explanation for the inconsistencies and exaggerations in her versions of events in the nature of a four year old child. Other factors strongly corroborate abuse. Although very young, her initial statements, as reported by Deputy LeBlanc, are definite. When asked, she readily supplied details of activities with many elements common to the other accounts. Her playmates testified that they observed her being fondled. According to Ms. Hayes, As.G.’s behavior since the events exhibits classic symptoms: irritability, inappropriate behavior toward male relatives; acting out sexually with Barbies and her stuffed animals.
In sum, the court finds the witnesses for the state to be credible.
The trial court examined the evidence and testimony with respect to As.G. and found sufficient credible evidence to convict Ste. Marie.
III.

CONTINUANCE

Ste. Marie contends that the trial court abused its discretion in denying his motion for a continuance. He alleges that the videotape of Detective LeBlanc’s interviews with the children is exculpatory because it shows that Detective LeBlanc was impermissibly suggestive during the interviews with the children, rendering the statements and trial testimony of the children unreliable. Ste. Marie explains that although an audiotape of the interviews was available, the videotape was the cornerstone of his defense as it allegedly contained nonverbal communication that was exculpatory. He contends that a continuance was necessary because he had planned to use the videotape to establish his defense and had prepared witnesses to discuss the contents of the videotape.
InThe State argues that the trial court did not abuse its discretion in denying Ste. Marie’s motion for a continuance. It emphasizes that Ste. Marie had an opportunity to view the videotape at his preliminary hearing on August 15, 1995, almost a year before the trial. It contends that Ste. Marie was unable to articulate with any specificity the materiality of the videotape to his defense. The State also argues that Ste. Marie failed to establish a continuance was necessary as he made no showing of the probability that the videotape would be found at a later date.
Article 712 of the Louisiana Code of Criminal Procedure provides that a timely filed motion for continuance “may be granted, in the discretion of the court, in any case if there is good ground therefor.” “LSA-C.Cr.P. Art. 712 commits a motion for continuance to the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice.” State v. Williams, 605 So.2d 686, 688 (La.App. 2 Cir.1992), writ denied, 612 So.2d 66 (La.1993); State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Moreover, the “specific prejudice requirement will be disregarded only where the time allowed defense counsel to prepare is so minimal that the ‘fairness’ of the proceeding is questionable.” Williams, 605 So.2d at 688; State v. Jones, 395 So.2d 751 (La.1981).
We find that the trial court abused its discretion in denying Ste. Marie’s motion for a continuance. The record reflects that there was no objective, physical evidence of the crimes Ste. Marie allegedly committed nor were there any witnesses, other than the children, to the alleged acts. Thus, the credibility of the children was determinative. Ste. Marie contends that his defense focused on the videotape, in *829 particular the nonverbal communication that occurred between Detective LeBlanc and the children and the suggestive nature of Detective LeBlanc’s questions. Despite Lathe State’s agreement to open-file discovery, the State did not inform Roy, Ste. Marie’s counsel, that he was not entitled to the videotape until five days before trial. Roy explained that he continued to prepare his defense knowing that he had a Motion to Compel outstanding. He was not informed that the videotape was missing until the day of the trial. Upon learning that the videotape was missing, he moved for a continuance. Roy was permitted to review the audiotape during the lunch hour. When questioned as to the importance of the videotape, Roy stated:
Q. You say that the audio tape is verbally inadequate because-
A. Because the video tape contains several pieces of nonverbal communication between the interviewer and the alleged victims which is inculpatory in nature which shows that the interviewer coaxed or coerced the responses she desired from the alleged victims through her nonverbal communication, and also that there were nonverbal responses made by the alleged victims that were interpreted on the audio tape by the interviewer but which this Court does not have an opportunity to interpret on its own unless we had the video tape which is now missing.
Q. But the tape [that] was provided to you is actually audible?
A. Some portions of it are.
Subsequently, the trial court denied Ste. Marie’s motion for a continuance and commenced with the trial.
We conclude that the State’s late disclosure that the videotape was missing and its delivery of the audiotape to Roy during the lunch hour on the first day of trial so prejudiced Ste. Marie that he was denied a fair trial. In his proffer to the trial court, Roy testified that the videotape was crucial to the defense. He contended that the videotape would demonstrate that Detective LeBlanc was impermissibly suggestive during her initial interviews with the children, thus rendering the children’s trial testimony unreliable. He explained that only some portions of the audiotape were actually audible and that the nonverbal communication between | ^Detective Le-Blanc and the children could not be ascertained from the audiotape. Roy’s claim that he did not have adequate time to analyze the audiotape is supported by the record. Although he had prepared witnesses to discuss the contents of the videotape, he did not have time to secure a witness to examine the audiotape. Considering the great weight that the trial court placed on the testimony of the children, we find that Ste. Marie’s constitutional right to a fair trial was seriously prejudiced by the late disclosure of the loss of the videotape and by the minimal time Roy was afforded to examine the audiotape. Thus, we conclude that the trial court abused its discretion in denying Ste. Marie’s motion for a continuance.
IY.

CONCLUSION

Based on the foregoing reasons, Ste. Marie’s conviction is reversed and his sentence is vacated. The case is remanded to the trial court for a new trial.
REVERSED; SENTENCE VACATED; REMANDED FOR A NEW TRIAL.

. An additional assignment involving whether La.R.S. 15:171 established a six-month limit on trials was found to have had merit by our court, but was reversed by the Louisiana Supreme Court in State v. Ste. Marie, 98-1167 (La.12/18/98), 723 So.2d 407.

. Defendant attacks the sufficiency of the evidence with respect to Am.G. and As.G. only.

. Another juvenile.